JOHN B. DOGGETT, PLAINTIFF IN ERROR, *vs.* MARCELLUS JORDAN, DEFENDANT IN ERROR.

It is erroneous so to instruct or charge a jury, as to leave the whole case to the *opinion* of the jury, without reference to the testimony. If a charge is so framed, the jury may suppose that they are at liberty to find their verdict upon what they know of the case, irrespective of the evidence before them.

The question whether a partnership exists between parties, is a question of fact for the jury to determine, upon the evidence adduced, under the instruction of the Court, if asked, as to what, in law, constitutes a partnership. It is error to tell the jury that a partnership exists, and that a defendant is liable in consequence of such partnership. Such a charge is erroneous, because it is both as to the law and the fact, and the Court is, therefore, not warranted in giving it.

The jury should be told by the Court that they are the sole judges of the facts, and that it is not only their right but their duty to find according to their own views of the proofs before them, regardless of any opinion the Court may entertain in reference to such proofs.

A charge to the jury upon the facts of the case is in violation of the express provisions of the act of the General Assembly of January 3, 1848, entitled " An act to amend the several acts regulating judicial proceedings."

It is error not to reduce to writing the charge given by the Court upon the law of the case. The act of January 3d, 1848, makes it the duty of the judge presiding, upon the trial of common law causes, to charge the jury *only* upon the law of the case, and points out the manner of such charge, and directs that it shall be wholly in writing.

Error to Leon County Circuit Court.

This was an action of *assumpsit*, brought by Jordan against John B. Doggett and Henry Doggett, in the Circuit Court of Leon County, claiming the sum of one thousand dollars, for services as an overseer, alleged to have been rendered the defendants in the years 1843 and 1844, at a plantation in Leon County, called the Black Creek plantation. Henry Doggett was not served with process, but the plaintiff, under the provision of the judiciary act of this State, elected to proceed against John B. Doggett, who was served. The cause was tried before the Hon. THOMAS BALTZELL, at the Spring Term of the Circuit Court of the County of Leon, 1848.

The bill of exceptions shows the following state of facts, as proved at the trial : The plaintiff introduced a witness, who testified that he, plaintiff, was overseer on the Black Creek plantation, which belonged to Henry Doggett, during the years 1843 and 1844. That John B. Doggett told witness that he had hired plaintiff to oversee said plantation—and that, since the commencement of this suit, he had told witness that he had hired plaintiff for his uncle, Henry Doggett. That John B. Doggett, so far as witness knew, had no interest other than eight hands working on the plantation, and that he informed witness that these were placed there to help his uncle to work out of debt. Witness also proved that plaintiffs' services as overseer were worth $400 or $500 per annum.

Plaintiff here rested his case, and introduced no other testimony.

Defendant then proved by Hardy Gaskins, a witness called to testify on the part of defendant, that he was present in the State of North Carolina, in 1842, when Henry Doggett employed plaintiff as an overseer for his Black Creek plantation—*John B. Doggett* was not present. That plaintiff continued in the employment of Henry Doggett during the years 1842, 1843, and 1844 ; but that in the latter part of the year 1844, he was engaged on another plantation.— That plaintiff complained to witness in the spring of 1845, that Henry Doggett had left Florida for North Carolina, without paying him for his services. Plaintiff made no allegation of any claim against

John B. Doggett at that time, nor did witness ever hear of any such claim until the commencement of this suit.    Henry Doggett had forty hands, and John eight.    That the plantation belonged to Henry—that John brought his hands to this country in 1842, and owned no land, so far as witness knew.    That John lived on the plantation, and acted as the agent of his uncle.

Defendant proved by another witness, that in 1846, plaintiff had given him a draft on Henry Doggett, for some six or eight hundred dollars, which he requested witness to present to him in North Carolina, and collect if possible.    That plaintiff at that time said nothing to witness about any liability of John B. Doggett to him.

James J. Barnes was sworn, and testified that he was employed to oversee the Black Creek plantation in 1844—that he was employed by Henry Doggett—that John B. Doggett's slaves were there, and worked as they had when plaintiff was overseer at that plantation— that witness never looked to John B. Doggett for his pay—that the plantation belonged to Henry, and that John acted as the agent of the old man.

Defendant also exhibited a receipt, dated in January, 1845, signed by plaintiff, for the sum of two hundred dollars paid him by Henry Doggett, in part payment of plaintiffs' services as overseer on the Black Creek plantation.

After argument of counsel, the Court below charged the jury, as is set forth fully in the opinion pronounced by this Court.  To all which charge, and to the refusal of the Court to give the instruction asked by defendants' counsel, (also stated in the opinion,) the defendant by his counsel excepted.

*Branch*, for plaintiff in error :

The liability of John B. Doggett is alleged in the declaration *to be joint with that of Henry Doggett*.

The evidence, therefore, to entitle Jordan to recover in this action must show their *joint* promise or *assumpsit*, or it must arise from the fact that they were partners. The joint liability of John B. Doggett can in no other way be established, and the expression in the charge of the Court, "liable as partner or otherwise," can mean nothing more.

It is not pretended there was a *joint* promise, nor does the evi-

dence in the remotest degree show there was ; nor, indeed, is there evidence that John B. and Henry Doggett jointly employed him, from which a joint promise or liability might be implied. Then as there was no joint promise, the only other way in which John B. Doggett can be made *jointly* liable is upon the presumption, which seems to have been adopted by the Court, that *there was a partnership.*

To constitute John B. and Henry Doggett *partners,* there must have been a participation mutually *in the profits.* This is the test. 3 Kent Comm., 23, 25, 28. 2 Greenleaf Ev., 393–'4–'5.

There is no evidence whatever that John B. Doggett ever received one cent of the profits, or any thing else, or that there was any agreement that he should. The proof is, that he was merely an agent of his uncle, Henry Doggett, without any interest in the plantation, *or the profits thereof.*

Nor is it pretended that either John B. or Henry Doggett ever held themselves out to the world as partners. The evidence is to the contrary, and shows that it was well known that they were not.

If, then, John B. Doggett was liable neither on a joint promise, nor as a partner, the Court erred in instructing the jury that he was, and, *a fortiori, that he was liable for the whole amount of Jordan's claim.*

If the Court should hold, that John B. Doggett was liable as a partner, then *the judgment should have been against both,* both being sued.

Upon either hypothesis, the judgment is erroneous—for if a partner, the judgment should have been against both, and joint ; or if he was *not* a partner, the Court erred in instructing the jury that he was *liable for the whole claim.*

If Jordan had a demand against John B. Doggett, for his care and diligence in overseeing his hands, he could not recover in this action, but should have sued John B. Doggett *individually,* in a separate suit. This action is against John B. Doggett and Henry Doggett, *on a joint liability,* and a judgment could not be taken *against one,* on a *separate* and *individual claim.*

As to the effect of the receipt and draft given by Jordan on Henry Doggett, for the claim now sued for, the Court should have instructed the jury that they were *prima facie* evidence that Jordan gave the credit to Henry Doggett *alone,* and that if he now sought to make John B. Doggett liable, he should explain or rebut their effect by

other evidence. Instead of this, the Court instructed the jury in such a manner as to mislead their minds.

In relation to fourth error, see acts of General Assembly, passed 1847–'8, page 12.

The Court also erred in refusing to give the instruction asked by defendant's counsel. Possession of personal property is ordinarily evidence of title. But where the property is admitted to be in another, the only inference from the lawful possession of negroes, is that the party in whose possession they are either *hired* them from the owner, or that they were loaned to him.

In this case, the property in the eight negroes was admitted to be in John B. Doggett, and the possession of Henry Doggett to be lawful. Is it not, then, a legitimate presumption, in the absence of proof to the contrary, that John B. Doggett's negroes were hired by Henry Doggett?

One thing, however, is certain—that the possession of John B. Doggett's negroes by Henry Doggett, or the fact that they were at work on Henry's plantation, does not, *per se* or *prima facie*, make John and Henry partners. If it did, persons hiring out their negroes would run great risks by being, without their knowledge or consent, made partners of persons totally insolvent, and, as in this case, might subject themselves to heavy losses.

*Long & Walker*, for defendant in error:

This was an action of *assumpsit* brought by plaintiff against John B. Doggett and Henry Doggett, to recover compensation for services alleged to have been rendered as overseer on a plantation, called the "Black Creek Plantation," in the years 1843 and 1844. Process was not served on Henry Doggett, and the sheriff having returned that he did not reside in Leon County, the cause proceeded against John B. Doggett alone. See Thompson's Digest, 327, sec. 3. 9 Mass. R., 300.

The substance of the charge of the Court, as we understand it, was that if the jury believed from the evidence that the plaintiff had rendered services to John B. Doggett and Henry Doggett jointly, and had not agreed to look to Henry Doggett alone for payment, then that John B. Doggett was jointly liable for the whole amount of the plaintiff's wages. See Addison on Contracts, 214, 876, 880. 9

Mass. R., 300.   If this position be correct, then the first and second errors are not well assigned.

The third error assigned we think is founded in mistake of fact.— It will be seen by reference to the testimony of Gaskins that the plaintiff had charge of the Black Creek Plantation for Henry Doggett alone in 1842, before John B. Doggett brought his negroes to this country. It was in part payment of the wages of that year that the two hundred dollars mentioned in the receipt were paid.   The order sent by Daffin to North Carolina was for the balance due for 1842, and also for services rendered to Henry Doggett alone on his Jefferson County plantation, in 1844.   The verdict of the Jury was for services rendered to John B. Doggett and Henry Doggett jointly, on the Black Creek plantation, in 1843.   5 Mass., 196.

The fourth error assigned is also founded in a misapprehension of the facts.   The Court did reduce to writing every thing it charged "as to the law of partnership."

It is deemed a sufficient answer as to the sixth error assigned, to say that it was the duty of the jury to draw their own presumptions from the testimony before them.

In answer to the seventh assignment we say that the refusal to grant a new trial was matter of practice which cannot be assigned for error in this Court, and if it could be, no sufficient ground for a new trial was shown.


Opinion by Chief Justice DOUGLAS:


This suit was instituted in the Leon Circuit Court by Marcellus Jordan, the plaintiff in the Court below, against John B. Doggett, the plaintiff in error, and Henry Doggett, against whom summous *ad respondendum* issued, which was returned by the sheriff endorsed in these words : " Executed by serving a copy hereof on John B. Doggett—Henry Doggett does not reside in this County."

The declaration contains several counts in *assumpsit*, all in the usual form, upon a claim for services charged to have been rendered by the said Marcellus Jordan to the said John B. Doggett and Henry Doggett, as overseer of a plantation.   To which declaration the said John B. Doggett put in a plea of *non assumpsit* and issue was joined thereupon, and the case was submitted to a jury who returned a verdict for the plaintiff and assessed his damage at fourteen hundred

and eighteen dollars, for which sum a judgment was entered, and that judgment has been brought up to this Court by writ of error.

The record contains a bill of exceptions that sets forth the evidence adduced to the jury, and goes on to state that "after argument of counsel the Court instructed the jury that, if they were of opinion that the negroes proved to be owned by John B. Doggett were actually hired to Henry Doggett, and the former was agent of the latter merely, they will find for the defendant.

"If the jury shall be of opinion that there was no hiring, then that, in general, the liability of a party depends upon services rendered to him. That, in this case, if the services were rendered in the care and management of eight negroes belonging to John B. Doggett, with forty belonging to Henry Doggett, on the plantation of the latter, John B. Doggett was responsible to the plaintiff to the extent of his interest, certainly. Whether liable to the extent of the claim as partner, or otherwise, is a question of greater difficulty; but the Court inclines to the opinion that he is, and so instructs the jury. This is the general rule, and its operation may be avoided by evidence that the plaintiff agreed to look to one of the parties and not to the other for payment, and that a receipt in part payment to one of the parties does not confine the liability to him nor prevent the operation of the contract as to the other."

The Court further, as to the responsibility of John B. Doggett as part owner of the negroes, informing them as to the law of partnership, instructed the jury, "if they were satisfied that defendant and Henry Doggett were partners in the business of farming, then the defendant was responsible, as a partner, to the plaintiff, jointly with Henry Doggett, for the services rendered."

The following are the errors assigned, to wit:

First. The Court erred in instructing the jury that John B. Doggett was liable for any part of Jordan's claim as overseer.

Second. The Court erred in instructing the jury that John B. Doggett was liable, as partner or otherwise, for the whole of Jordan's claim.

Third. The Court erred in instructing the jury that Jordan has a right to look to John B. Doggett for his pay as overseer, after he, Jordan, had recognized Henry Doggett as *his sole debtor*, by receipting to said Henry Doggett for part of his pay and drawing a draft on him for the same; and in not instructing the jury that such receipt

and draft were *prima facie* evidence that Jordan recognized only Henry Doggett as his debtor and looked to him alone for pay.

Fourth. The Court erred in not reducing to writing and incorporating in its charge to the jury what it instructed the jury " as to the law of partnership."

Fifth. The Court erred in entering judgment against John B. Doggett *alone*, if John B. Doggett was liable as a partner of Henry Doggett.

The *sixth* it is not deemed necessary to notice, and the *seventh* and last was abandoned at the argument of the cause.

The first and second may well be considered together, for although the latter is somewhat more extensive than the former, both are deemed erroneous and for similar reasons. They are both founded upon that part of the charge in which the Court instructed the jury that, " if the jury shall be of opinion that there was no hiring, then that, in general, the liability of a party depends upon services rendered to him ; that, in this case, if the services were rendered in the care and management of eight negroes belonging to John B. Doggett, with forty belonging to Henry Doggett, on the plantation of the latter, John B. Doggett is responsible to plaintiff to the extent of his interest certainly. Whether liable to the extent of the claim, as partner or otherwise, is a question of greater difficulty ; but the Court inclines to the opinion that he is, and so instructs the jury."

The first thing which presents itself to our notice in this charge is, that the whole matter appears to have been left to the opinion of the jury, without any reference to the testimony. There are few points upon which jurors are more apt to mistake, than in supposing that they may find their verdict upon their own knowledge of the case, acquired before they took their seats in the jury box. We presume this was an inadvertence of the learned judge who tried this cause, as it is one that often happens in other courts, and it may have had no material bearing in this case ; but we can readily imagine cases where thus to charge might have a very injurious effect, and have therefore deemed in not amiss to mention it, *en passant*, as we think care should always be taken to instruct the jury that they must base their verdict upon the evidence adduced before them. " The jurors are triers of the facts not upon their own personal knowledge," but from the evidence thus adduced. Clark *v*. Robinson, 5 B. Monroe's Reps., 55. 2 Supp. to the U. S. Digest, 763, No. 232. The Uni-

ted States v. Fourteen packages, &c., Gilpin's C. C. Rep., 235. 1 Starkie on Ev., 405. 3 Black. Comm., 374.

Again, the jury were charged in substance that, if there was no hiring in the case, if the services were rendered ·in the care and management of eight negroes belonging to John B. Doggett, with forty belonging to Henry Doggett, on the plantation of the latter, John B. Doggett was responsible to the extent of his interest certainly.— This, however, we think does not necessarily follow. The eight negroes might have been lent by John B. Doggett to Henry Doggett as an act of kindness by the former to the latter, or Henry Doggett might have held them as guardian of John B. Doggett, or, indeed as a mere wrong doer, or in some one of various other ways that may be imagined, without rendering John B. Doggett liable to the plaintiff for overseer's wages.

But the Court added "Whether liable to the extent of the claim, as partner or otherwise, is a question of greater difficulty ; but the Court inclines to the opinion that he is, and so instructs the jury." This is the first time in the whole case that any thing is said in the record about a partnership. The defendants were not sued or declared against as partners, and the testimony, the whole of which is set out in the bill of exceptions, no where speaks of·them as partners.— Yet it was not only left to the jury to find that John B. Doggett was liable to the whole extent of the claim as such partner, but they were expressly charged that he was so liable, or otherwise.

The most objectionable feature, however, in this instruction is, that it is compounded of both law and fact. For instance, whether a partnership existed, or not, between John B. Doggett and Henry Doggett, at the time when the services sued for in this action were rendered, was a question for the Jury to determine upon the facts of the case, under the instructions of the Court, if instructions were asked as to what in law constituted a partnership ; but here the fact of partnership is assumed by the Court and·the jury specially instructed that the defendant, John B. Doggett, is liable, and thus to assume (where, as in this case, if there was any evidence of partnership it was very slight, wholly inferential, the fact contested and the testimony contradictory,) and to charge both upon the law and the fact was erroneous. McRea v. Smith, 4 Rand. Reps., 463. Plater v. Scott, 6 Gill & John. Rep., 116. Fowler v. Lee, 4 Munf. Rep., 373. McEldery v. Hannagan, 1 Harr. & Gill Rep., 308. Kendall v.

Hughes, 7 B. Monroe's Reps., 371. It is true that the Court further, as to the responsibility of John B. Doggett as part owner of the negroes, informing the jury as to the law of partnership, instructed them that, if they were satisfied that defendant and Henry Doggett were partners in the business of farming, then defendant was responsible as a partner to the plaintiff, jointly with Henry Doggett, for the services rendered;" but they had been, as we have seen, expressly charged before that he was so liable ; and they were not, in the further instruction, informed that they were the sole judges of the facts, and that they had not only a right, but that it was their duty to find their verdict according to their own understanding of the proofs adduced in the cause, whatever views the Court might entertain in regard to them. And besides, they had also been before especially charged that, if John B. Doggett was not liable to the whole extent of the claim, as partner of Henry Doggett, he was liable otherwise to that extent ; so that the jury could not have found any other than a verdict for the plaintiff for his whole claim, without disregarding the instructions of the Court, as they appear in the record. Perhaps, if the portion of them which was verbally given had been reduced to writing and filed, we might have found in it a proper explanation of the whole matter ; but unfortunately that was not done and we are compelled to decide the case upon the record as it is presented to us, and that shows a charge to the jury upon the facts of the case, which is against the express provi-ions of the act of the General Assembly of January 3, 1848, " To amend the several acts regulating judicial proceedings," Pamph. Laws of 1848, page 12, by which it is made the duty of the judge to charge the jury *only* upon the law of the case. In Reel *v.* Reel, 2 Hawk's N. Ca. Reps., 85, there was a motion for a *new trial* on the ground that the court intimated its opinion to the jury on the matter in issue. Taylor, Chief Justice, delivering the opinion of the Court, said : " The act of Assembly relative to the duty of a judge charging forbids him to give an *opinion* whether a fact is fully or sufficiently proved, such matter being the true office and province of a jury. It is not for this Court to discuss the wisdom or expediency of the law, or to pervert its true construction under a belief that no mischief can be produced thereby, or even that justice can be more substantially administered." A new trial was therefore awarded. The 9th section of the 6th article of the Constitution of Tennessee provides : " That judges shall not charge the jury with

respect to matters of fact, but may state the testimony ;" and under this provision the Supreme Court of that State, in the case of Ivey *v.* Hodges, 4 Humph. Reps., 154, held " That the judge had *no* right to declare what is proved, but simply to state what is sworn to ; that the truth of the statements of witnesses and the deductions to be drawn therefrom must be left to the jury." Cited in 1 Supp. to the U. S. Dig., page 170, No. 294.

The facts should be left to the jury whose peculiar province it is to say what effect they shall have. 10 Peters' S. C. Reps., 98. It is the province of the jury to weigh and decide on the sufficiency of the evidence. Greenleaf *v.* Birth, 9 Peters' S. C. Reps., 299.

As to the *third* error assigned we think that the receipt and draft therein mentioned should have been left to the jury with the other evidence in the cause, as testimony conducing to prove that Jordan recognized only Henry Doggett as his debtor and looked to him only for pay.

The *fourth* error is undoubtedly well assigned. It is, that " The Court erred in not reducing to writing and incorporating in its charge to the jury, what it instructed the jury 'as to the law of partnership.' "

The act above cited, sec. 1, provides : " That hereafter, upon the trial of all common law causes in the several courts of this State, it shall be the duty of the judge presiding on such trial, to charge the jury *only* upon the law of the case and in the manner following, that is to say, the said judge shall only charge the jury upon some points of law or exceptions to evidence arising on the trial of said causes ; and said charge shall be *wholly* in writing." The second and third sections contain provisions on the subject not deemed material to the decision of this cause. But the *fourth* provides : " That *all such instructions*, as well those given as those denied, and also as well those prayed for by the parties as those declined by the said judge, shall be signed and sealed by the said judge and form a part of the record in the cause." In this case exceptions were taken to the whole of the charge, and that important portion of it does not appear. Yet the clerk of the court from which this record comes, has certified that it is a true transcript of the record and proceedings, &c. The provisions of the statute last mentioned are restrictive and mandatory, not merely directory ; and whatever views we may entertain as to their wisdom or expediency, it is our duty to obey them, and a failure so to do is error.

The *fifth* error alleged seems to have been assigned under a mis-

apprehension of the provisions of our judiciary act, the 12th section of which (Duval's Compilation, page 92, Thompson's Digest, p. 327, No. 2,) declares : " That when any original writ or summons has been sent out against two or more defendants, and returned by the sheriff or other officer served upon one or more of the defendants, and that the other defendants do not reside in said district or county, as the case may be, it shall be lawful for the plaintiff, at his option, to proceed to judgment against those upon whom process has been served, or to obtain from the court time to perfect service, &c." We have seen that the summons in this case was issued against John B. Doggett and Henry Doggett, and that it was returned " served on John B. Doggett, and that Henry Doggett did not reside in this [Leon] County." This brings 'the case within the provisions of that statute ; 'the plaintiff elected to proceed to judgment against John B. Doggett, the defendant upon whom process had been served, and we see no reason to doubt his right to do so. The fifth error, therefore, is not sustained.

That errors should occasionally be committed by the most astute and able judges, in the hurry of the trial of cases at *nisi prius*, is a matter that need not excite surprise in the mind of any one. The only wonder is that they do not more frequently occur, and especially in the charge of the Court to the jury, which must often be given immediately after the close of a long and tedious examination of testimony, complicated and perplexing, out of which important, difficult and not very familiar questions of law frequently arise. But when they do take place it is not therefore the less our duty to correct them. And here it may not be improper to remark that there are no two matters in the exercise of judicial authority, about which a judge should be more careful than in not permitting the jury to usurp the power of the court, to decide questions of law, and in not himself invading the province of the jury to respond to the facts of the case.

Believing that the facts of this case were not properly left to the jury and that, if they had been so, the verdict might and probably would have been different, and the Judge having failed to reduce the whole of his charge to the jury to writing and file it, according to the requirements of the statute upon the subject, to which we have above referred, the judgment of the Court below is reversed, the verdict to be set aside, a *venire de novo* awarded, and the cause remanded for further proceedings in accordance with this opinion.

*Per curiam.*